Your Honor, this is the third case on this morning's call, 209-234, Henry v. Marriage of Salem. On behalf of Mr. Terry Stephanius, on behalf of the Athlete, Mr. Larry Thompson. Mr. Stephanius, you may proceed. Thank you. Good morning, and thank you for entertaining oral arguments on behalf of the appellant. In essence, this case involves the construction and application of Section 503 of the Illinois Marriage and Dissolution of Marriage Act. In connection with the classification of property, its valuation, and ultimately its allocation and distribution amongst the parties. Which, appellant, argues to the court, was improperly assessed by the trial court below. With regard to the classification of the property, we enter an interesting area of the law with regard to the presumptions that are supposed to be applied to different pieces of property depending on when they were acquired. In this case, the evidence that was before the trial court, which is part of the problem that led to some of the inherent difficulties with the trial court's opinion, or the lack of evidence I should say also, caused the trial court to improperly classify everything as marital. Because although the trial court is right that the statute does provide that any piece of property that is acquired during the course of a marriage is presumably marital, that statute also allows for a rebuttal of that presumption. Is your argument that we should make a de novo review of the questions you're about to raise? Based on the case law that I saw and put forth in the briefs, it's the manifest weight of the evidence. So if you construe the record, which I will give the court deference because it is a difficult record to go through. And it was hard for me to piece together the statement of facts because it is disjointed. And one of the problems I think that arises not only in this case, but a lot of the cases where it is a long marriage, 30 some odd years, the parties are disadvantaged if they did have non-marital property before the date of the marriage. Because you do have a problem with the presence of proof. How do you get the documentary evidence that most courts would like to see? Because supposedly that is the best evidence that could be used to decide. And whose burden is that? That is the burden of the party that is trying to rebut the presumption or to say a piece of property is marital or non-marital. It is a fairly high burden, is it not? It is. The case law that says the presumption may be rebutted with clear and convincing evidence. The party challenging the presumption carries the burden of proving it. And any doubt as to the nature of the property will be resolved in favor of a finding that the property is marital. So I think it's a fairly high burden. Absolutely correct recitation of the case law. I think it's an interesting burden that has somewhat been distilled down over the course of years. I think it arises. The interesting part about it is clear and convincing appears nowhere within the statute when you're talking about rebutting that presumption. It's not in there. It is in the second part where you talk about reimbursement, if you're going to argue reimbursement. So if you go off of the old Latin maxim, inclusio unus, that's exclusio alterius, I would take the position that I think the case law has somehow picked up a standard that wasn't intended by the legislature. I think it comes from the Supreme Court's decision in Rogers, where in Rogers they were talking about whether or not a home that was used by the parties, which was acquired primarily by non-marital funds, should be marital. And what they talked about is if you want to rebut this presumption, you have to come forth with convincing evidence to rebut the presumption. And then I think over the course of the last 20 or 30 years, there's been cases that have added the clear and convincing because that's a common standard that's in there. But even if we're going to go with the clear and convincing standard, I think we also have case law out of this district, Henke, if I'm pronouncing it correctly, that says you don't necessarily need documents. Testimony in and of itself could rise to the level of clear and convincing evidence. And in that case, which was interesting when I was reviewing it, the party who was charged with that burden had actually admitted to being to falsifying checks. And she was convicted of a misdemeanor. And the court accepted her testimony and said that it raised to the level of clear and convincing evidence. And I think I'm not equating my client to a convicted misdemeanor person. But I know that there were some credibility issues that the court found in the underlying case in this case. However, I think the testimony in the case, in the inferences and the evidence that was before the court, raises is up to the level of clear and convincing evidence. Because in this case, you have to follow the money to a certain extent. Because of the misdirector. Yes. In terms of the issues in the case, I don't think it would be disputed that testimony alone could overcome presumption. However, are you acknowledging then, as the trial court seemed to find, there really was no specific documentary evidence presented in this case that really tipped the scales one way or the other as to whether or not these properties, again, acquired after the marriage, were not marital. There wasn't really any documentation forthcoming, was there? There was a difficulty. Yes, there wasn't much documentation. There was documentation from appellant's position. There was documentation that was provided that established that this gentleman, the appellant, had received an inheritance or a gift because his father had not passed away at the time. I'm going to use those terms interchangeably, although I know legally speaking they have somewhat different connotations, but the end result is the same. Because it goes towards whether or not this property was marital or non-marital. And I think that was exemplified and highlighted in the court's oral opinion that it was frustrated at the lack of documentary evidence. And I understand that. But this is an interesting and unique situation, and that's why courts look at these cases on a case-by-case basis for the facts that are available and the evidence that is available in each case. And although this is not properly before the court, it might end up being before the court in the future. We're going to have some issues of comedy with different countries, essentially, down the road, because we have a property that's located in Turkey with their own set of laws in Egypt. And I know it's not before, but it goes back, I guess in a roundabout way is what I'm saying, because I've had cases like this. Property systems in different countries... Let me suggest two items. Number one, your time is limited. Yes. Number two, after reading the briefs, it seems like there are two situations where they have to thread through the entire marriage until you got to the divorce stage. One is the Canadian property, and the other is the land inherited from family. And if you could take that Canadian property and that land, if you're satisfied with that argument, I think you'll be able to do it within 15 minutes. But if you keep getting too much outside of it, you're going to all of a sudden hear a bell ring, and you'll be sitting down. And I'm done. Sure. With respect to the Canadian property, I think the evidence was relatively clear and convincing on that. I don't think there was any dispute between the parties that appellant was possessed of Canadian property before the parties were married, and that that property was improved. There was a little bit of a dispute, although I think the parties essentially agreed that the property was improved during the course of the marriage. However, there was no evidence or testimony which reflected if any marital contributions were made towards that improvement. I think it was also undisputed, and the record will bear it out, that that property was sold during the course of the marriage. Where we do have a dispute is what the sale price of that property was and where those proceeds went. Appellant testified that the sale price was in the $50,000 range, and I believe it was Canadian dollars. Perhaps I might not have made that clear in the brief, but I would assume, I think it's a reasonable assumption that since it's Canadian property, it was Canadian dollars. And the bulk of that money, $45,000 Canadian dollars, was entrusted to the petitioner to go to Turkey and purchase a piece of property which we now refer to as Dragos. The Dragos lot at that time, which has now been built up into a villa or some type of improved piece of property. Petitioner acknowledged that the Canadian property was sold. I believe she testified that it was sold in the $30,000 range, but she claimed that that money was spent to pay and defray the party's debts. There was no evidence of what debts, if any, existed at the time. I think if you follow the chain and the timing of the events, appellant's position is more plausible, credible, and indicates that he made a non-criminal contribution to the purchase of this Dragos property. Petitioner's position, obviously, is that her mother bought it for, I believe it was $3,000. But the timing of the events really followed what the evidence showed with the money. Again, follow the money. But there's no documentary evidence to establish the proposition one way or the other, is there? Which is the problem, again. There was some documentary evidence which reflected that both parties are in the title to the Dragos property, the Turkey property. There is no documentary evidence from the transaction of the sale of the Canadian property, which would have been almost 30 years before the trial. Counsel, let me try and come up and we can put it in these terms specifically. You've got a situation where there's a lack of documentary evidence. You've indicated that testimony itself could overcome the presumptions. But then you also alluded to something that's a theme running through here, to be very blunt. It appeared that the trial court had some problems with the credibility of both the petitioner and the respondent in this case. Did he not? Yes. So if you've got no documentation, you've got credibility problems on either side, he then decides the presumption is not rebutted and it's marital. How do you overcome and show us how the court erred in doing that then? I'll go back to look at the money and use common sense. So you're saying that we should make a reasonable inference or the trial court should have made a reasonable inference based upon following the path of the money. Correct. I understand and appreciate the trial court's frustration because as an attorney, I often face the same thing when I have a problem with the presence of proof and evidence. But that doesn't change the fact that you have to apply your common sense, your understanding of how things work and with whatever evidence is in front of you, try to come up with what is the right and just decision under the strictures that are imposed upon you by the law. But your burden is to convince us that it's against the manifest way, which is relatively difficult to do under the definition of against the manifest way. With the manifest way, I agree. It's a lesser burden than abuse of discretion. So it's not as high. But with regard to what the burden is in this case, I think that the evidence that was in front of Judge Leston, as well as the inferences that arise therefrom, demonstrated the opposite conclusion with regard to what his determination was is evident. And I think that his findings weren't necessarily based on the evidence. Because if you follow the money, again, I don't mean to belabor the point, but how is it conceivable that the parties were able to acquire this substantial property based on the income that was generated by the respondent? And it's pretty uncontradictive that he was the only one that made any type of substantial or significant contributions towards the acquisition, preservation, and maintenance of the family. Petitioner was employed for a very, very short period of time early on in the marriage. But after that, it was all responded. So what does that have to do with anything? Well, it goes to show that if you follow the trail of money, there was no way that the respondent earned enough from his marital earnings. Because there was only one significant block of time where he earned substantial money, and that was his employment with Forney for a period of six or seven years. Prior to that, the evidence is unrebutted from both parties' testimony that he really didn't make that much money. And he was often unemployed for periods of time as the family moved around from either state to state or country to country. So if you're sitting in, as is the trier of fact, and you have to come to a conclusion, well, okay, what is this property? I think Judge Leston was frustrated, and he just deferred to the presumption, I understand, because that's what the statute says. All right, well, the one thing that I have that's a consistent theme here is that this property was acquired during the course of the marriage. I think you have to do a little more. I think you're charged with a bit more of a responsibility in assessing and weighing the evidence to say, well, wait a minute, how was this property acquired? Because even though I find both of these people's testimony to be incredulous, but it wasn't all the testimony. I think it was certain parts of the testimony that he found difficult to believe, one of which was the lack of documentary evidence, which, again, not being well-versed in Egyptian real estate law or Turkish real estate law, I can't sit here and argue to you whether or not they have the same amount of paperwork that we do. There are things within the testimony that he would have certainly found credible, and in that sense, I think he needed to properly assess what was going on with how this property was actually acquired. How did these parties have the ability to buy hundreds of thousands of dollars' worth of property? So you're saying that if you believe your client that the property was sold and the money that was sold from that premarital property then purchases another piece, that other piece remains premarital property as well? Unless it has otherwise been transmuted. I mean, if you follow the chain of the statute, yes. But in this case, it wasn't because the position is obviously it was kept segregated in its own name, so on and so forth. Wait, did the process of the sale of the Canadian property, did that go to the Dragos Company? That is Appellant's position. Well, I thought you said the Dragos went into both names. It did. It did, because eventually, if I might have one second, I can tell you, and the record will bear it out, what had happened was Petitioner, Appellant's testimony was that Petitioner was entrusted with the $45,000 to buy this property. She instead bought a different piece of property, which is now the Dragos property, put it in her name alone. Probably around eight or nine years later, she put his name on it, too. So that's the sequence, and that's what the evidence bears out. And there's a dispute, because Petitioner will tell you that Dragos wasn't acquired with the proceeds from the Canadian property. She testified her mother bought it because her father left her some money from his inheritance. And her testimony is that the money from the Canadian property paid off debt. Debt, yes. Thank you. Thank you very much. Thank you, Mr. Appellant. Counsel, may I proceed? May it please the Court. It seems to me that there's three principles here which are central to the decision in this case. And those principles, I believe, are clear and very well established by the case law of this and other courts in Illinois. First, it is for the trial court to assess the credibility of the witnesses. Second, that all property acquired during the marriage is presumed to be marital, as Your Honor pointed out, unless that presumption is overcome by clear and convincing evidence. And third, that the allocation of property and debt by the trial court between the parties should not be overturned unless there is essentially an abuse of discretion. All of the husband's claims and arguments are contrary to these principles. As counsel noted, in some ways this was a very difficult case at trial. I was there. Although both parties were U.S. citizens, they were foreign-born. English was their second language. The trial lasted almost three full days with only two witnesses. There were a variety of documents offered in English, Turkish, and Arabic. And, as Your Honors have noted, and Judge Leston took pains to point out, there was a huge lack of documents that otherwise should have been expected. But the trial court's decision, I believe, was proper, and he correctly applied the applicable law to the evidence, which was properly before him. The husband is essentially claiming here that almost all of the party's property acquired during a 33-year marriage was non-marital. It all comes from his claims of an inheritance or a gift from his father in Egypt. But there is no evidence, none, of that inheritance or gift other than the husband's own discredited testimony, which was unbelievable to the trial court. Counsel makes the argument, follow the money, I believe were his words. But we cannot follow the money. Why? We don't know how much money there was, where it came from, where it went. There was absolutely a total lack of documents on that, including a lack of documents on the cost of any of these properties. Drago's property, for example, the wife said it was purchased for about $3,000 that she got as an inheritance from her father when he passed away. The husband says, oh, no, it was purchased for $45,000 from money I got from the sale of the Canadian property. We have no documents on the sale of the Canadian property. We have no documents on the purchase of that Turkish property or how much it was for or any other kind of documents that were submitted to the trial court. Let me just interject. The Canadian property was clearly bought before the marriage, correct? The property itself, the real property, was purchased before the marriage. The parties constructed a home. I believe the testimony on it was both parties made some efforts to construct that home. And it was sold at some point, I believe, in 1975 or 76. They didn't live there that long. And then the question is, OK, what happened to the money? How did that become marital property, in your argument? I'm not saying that the Canadian house was marital property. What I'm saying is the Canadian house was sold during the marriage, and we don't know what happened to that money. The wife testified that funds were used to pay off various debts that they'd accumulated during the course of the marriage in Canada, including construction costs on the house. The husband says, oh, no, it was used to buy the Dragos property in Turkey. Many years later, I would note. But there's no documents on that. And the party's testimony is totally opposed. So where does that leave us? It's transmuted. Where does that leave us in terms of the propriety of the trial court's decision, given that scenario? What the trial court has to look at is what is the property that the parties have now? Is any of that property non-marital? It's all presumed to be marital, unless that presumption is overcome by clear and convincing evidence. There was no clear and convincing evidence to overcome that proposition with respect to any of the property that they owned at the time of the divorce. And there was no documents to be able to trace money from the 1970s from the Canadian property into the property that they now own in 2005. From your briefs, too, you're implying that the monies that were used to make the improvements upon the Canadian property was marital money. Well, in a sense, I suppose the husband was working and the wife was there. They were married at the time that the home was constructed or improved in Canada in 1975. So I suppose there could be some marital contribution to that property. But again, there's nothing to show how much that Canadian property was sold for and what was used from the proceeds, except for the parties' totally different views of what happened with that money. And the sale of that property was not simultaneous or shortly prior to the purchase of the Drago's property? No, I believe the Drago's property was actually purchased, as I recall, around 1990-91. And the Canadian property was sold in the 1970s, certainly a long time before. So it's hard to trace the money? There was no evidence presented tracing the money. So when a counsel says follow the money, you cannot follow the money in this case and try and overcome the presumption here. The Henke case, which he referred to, I would note, does not state testimony alone can overcome the presumption. In fact, in Henke, what happened was there was testimony with respect to both the gift and there was documentary evidence admitted in the trial court of that gift, in particular an income tax return of one of the party's fathers clearly showing the disputed property as a gift. So Henke certainly does not apply here. I would also note that there's a document referred to in counsel's brief repeatedly as showing that the inheritance existed and it was a substantial amount of money. It was Respondent's Exhibit HH at trial. In fact, the trial record shows that that document was only allowed to be used to refresh the husband's recollection. And a specific objection to that document to be admitted in evidence generally was sustained. So there was no document offered in connection with this alleged inheritance. All we have left is discredited testimony, and I would submit that that alone cannot constitute clear and convincing evidence. What we're left with here are various articles of marital property that the court divided 50-50. Given the party's 33-year marriage, their circumstances at the time, I don't believe you can certainly say that that was an abuse of discretion on dividing property. Some of the husband's other claims I would submit are either wrong or simply misstatements. For example, there's references in this brief that the trial court failed to adequately or fully consider various pieces of testimony and evidence and brushed aside the law. Actually, if you look at the trial court's oral ruling prior to the written judgment, the trial court stated that it spent four or five times reviewing its notes on this difficult case, that it reviewed the evidence four or five times, that it reviewed written closing arguments by both counsel, setting out the case law and the statutes four or five times. Clearly, the trial court gave a lot of thought to its decision. With regard to the disposition of the Egyptian properties, there's a claim that somehow third-party interests were disposed of because the husband actually only occupied certain property and didn't own it, specifically what's referred to as the 75 fedans, and a fedan being approximately an acre. The trial court did no such thing. The written judgment is very particular that only the husband's legal interest, whatever that interest is, whether it's an ownership or a control or whatever, was to be divided. There was no impact on third parties with respect to that property. There was also the husband's claim of some $800,000 in debt versus $12,000 in debt for the wife, and that's how it was divided. But when you look at that $800,000 of debt, it suffers from the same defects that his argument on inheritance does. He claims $89,000 of credit debt. There were no documents showing such debt. He claims his family loaned him $240,000 while living in the United States. There was no documents showing any such loan, bank transfer, deposits, anything. And he claims a friend in Turkey gave him an additional $450,000 while living in the United States. Again, not a single document supporting those claims. Given that the wife earned about $10 an hour, that she had her own credit card debt personally, that she was living in a one-bedroom apartment, I don't believe that that allocation of debt was improper in the circumstances of this case or an abuse of discretion, particularly considering the husband's unbelievable and discredited testimony. In summary, Your Honor, we would ask that the trial court's decision, which we believe was sound and proper, be affirmed by this Court. Are there any questions? Thank you. Okay. With regard to the Canadian property, the evidence that was induced from both parties is that it was sold in the early 80s, anywhere from 1981 to 1983. Both parties testified that Dragos was bought in or around 1983. So the gross disparity of time that counsel alluded to isn't borne out by the record, and that will be shown in the testimony. With regard to Hankey, Hankey does specifically state that in that case, Mrs. Hankey's testimony, I think her name was Adele, and that's how the court referred to her, that it was her testimony was sufficient to meet the clear and convincing standard. Hankey's interesting because it also is somewhat similar to this situation because the court talked about how are you ever going to be able to establish what these contributions were. In that case, it was a 16-year marriage. Here we're talking about a 30-something-year marriage, and there wasn't documentary evidence. However, the court still found a way to find that those contributions were clearly traced through her testimony and to credit those towards the marital estate. And in particular, it dealt with the checking account that was established before the marriage. So it would have been Mrs. Testimony to demonstrate and rebut the presumption that what was in that checking account was or that marital contributions had gone into it. There was no evidence of that. But the court said under these circumstances, it used its reason. What part did the income tax return have in the Hankey case? With regard to the income tax returns, I don't think the court alluded to that outside to know that obviously marital monies were earned. So it used common sense. Since it was a checking account where bills were paid and monies were deposited over the course of time, it made sense to say, well, these are marital monies, and because they're such marital monies, we're going to use our common sense and logic to say that this should be deemed as marital. It essentially did a reverse transmutation and worked around the presumption and used the testimony to say that in this case Adele had met her burden to prove by clear and convincing evidence. I think this case is analogous to Hankey in the sense that the trial court is presented with a lack of documentary evidence. But if you look at the underlying facts of the case and what the evidence was in front of the court, and that's what we have to focus on, or the lack thereof, a similar conclusion can be reached in this case. Because it's difficult to conceive how these parties are able to acquire these substantial properties based on the evidence that was produced as to what the marital monies were and what the marital contributions or assets in terms of income was in this case. The money had to come from somewhere. And I appreciate the fact that Petitioner testified and relied on the presumption, as is her right to do. And I understand it's a good trial strategy. And I've complimented Mr. Thompson on it. I wasn't involved in the underlying trial. I came in afterwards. But it doesn't change the fact that the evidence before the trial court indicates a different result should have been achieved. And the one other thing that I think is of note and should be looked at is that how can this court ever assess, or how can the litigants ever assess whether the allocation and distribution of the property as it is, assuming everything else is fair or is OK, when there's no evidence of value? And I think the case is safe when that situation arises. Remand is appropriate. Because you can't tell. Isn't there testimony of value? There was testimony that wasn't accepted by the trial court. Correct. There was testimony of value by the parties. Nothing competent, as the cases or the law would tell you. So in that instance, even the trial court in its oral ruling said, I have no competent evidence of value. I really don't know what to do here. And I appreciate what Judge Lessing did. I understand what he was trying to do for these parties. Because that is the goal of our statute. It's to dissolve the bonds of matrimony. It's to dissolve the ties and connections. It's to disentangle. However, in this instance, I think it backfired. Because it's just going to lead to more. These people are still married to each other from the financial perspective. Because these properties are in dispute. Not only here in, again, proceedings that are now before this court. But in other countries. Case is taken under advisory. Thank you very much. Court stands in recess.